KAUFHOLD GASKIN LLP
STEVEN S. KAUFHOLD, ESQ. (SBN 157195)
Email: SKaufhold@KaufholdGaskin.com
RUTH L. HAWLEY, ESQ. (SBN 253112)
Email: RHawley@KaufholdGaskin.com
QUYNH K. VU, ESQ. (SBN 286631)
Email: QVu@KaufholdGaskin.com
388 Market St., Suite 1300
San Francisco, CA 94111
Telephone: 415-445-4620
Facsimile: 415-874-1071

Attorneys for Plaintiff
Skout, Inc.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SKOUT, INC.,<br><br>Plaintiff,<br><br>v.<br><br>JEN PROCESSING, LTD, JENNIFER NICOLE NEWNHAM, CHRISTOPHER RUSSELL NEWNHAM, INFIUM, LTD, CITYNET LINE, V.A.N. KERESKEDELMI ES SZOLGALTATO BETETI TARSASAG, EPIOHOST LTD, EDIBERT IAN DEGUZMAN, NORMAN DEMAJO, IDOYA LIMITED, BROUSKO INVESTMENTS LIMITED, MANOEL LEVY, JASON SILVER, JAKE RIOS, MINGKAI ZHANG, MR. ELITE TEAM, KRYZYSZTOF SLAWINSKI and DOES 5-100,<br><br>Defendants. | Case No.: 14-CV-02341-JSC<br><br>AMENDED COMPLAINT FOR:<br><br>1. BREACH OF CONTRACT<br>2. FRAUD<br>3. UNFAIR OR DECEPTIVE BUSINESS PRACTICES<br>4. VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT<br>5. VIOLATION OF THE CALIFORNIA COMPREHENSIVE COMPUTER DATA ACCESS AND FRAUD ACT<br>6. VIOLATION OF THE CONTROLLING THE ASSAULT OF NON-SOLICITED PORNOGRAPHY AND MARKETING ACT<br><br>JURY TRIAL REQUESTED |

Plaintiff Skout, Inc., ("Skout") for its Complaint against Jen Processing, LTD, Infium, LTD, CityNet Line, V.A.N. Kereskedelmi es Szolgaltato Beteti Tarsasag, Epiohost LTD, Marijana Stott, Business Services Nec, Edibert Ian DeGuzman, Norman Demajor, Idoya Limited, Brousko Investments Limited, Manoel Levy, Jason Silver, Jake Rios, Mingkai Zhang, Mr. Elite Team, Kryzysztof Slawinski and Does 5-100, (collectively, "Defendants") hereby alleges:

INTRODUCTION

1. This action arises from Defendants' abusive spamming of users of Skout's services. Skout is a free location-based platform for chatting with and meeting new people. Defendants are spammers who create fake profiles on Skout, and use automated bots and fraudulent links to lure Skout's users onto their own websites, for their own commercial gain. Defendants have caused, and continue to cause, Skout to lose users, lose prospective business relationships, and spend money, personnel time, and other resources combatting the problems caused by Defendants. Defendants have also irreparably damaged, and continue to damage, Skout's reputation.

THE PARTIES

2. Plaintiff Skout, Inc. is a California corporation with its principal place of business in San Francisco, California.

3. Defendant Jen Processing, LTD is a United Kingdom company that owns and operates the domain liveprivateparts.com, with its principal place of business in Berkshire, United Kingdom, doing business in the state of California.

4. Defendants Jennifer Nicole Newnham and Christopher Russell Newnham are individuals that own and operates the domain liveprivateparts.com, doing business in the state of California, and upon information and belief residing in Palm Beach Gardens, Florida.

5. Defendant Infium, LTD is a Ukrainian company with an office in Walnut, California, doing business in California.

6. Defendant CityNet Line is a Latvian company, doing business in California.

7. Defendant V.A.N. Kereskedelmi es Szolgaltato Beteti Tarsasag is a Hungarian company, doing business in California.

8. Defendant Epiohost LTD is a Ukrainian company, doing business in the state of California.

9. Defendant Norman Demajo is an individual that owns and operates the domain xxxblackbook.com, doing business in the state of California, and upon information and belief resides in Limassol, Cyprus.

10. Defendant Idoya Limited is a Cyprus company that owns and operates the domain xxxblackbook.com, doing business in the state of California.

11. Defendant Edibert Ian Deguzman is an individual that owns and operates the domains paydirtdollars.com and hookupcloud.com, doing business in the state of California, and upon information and belief resides in Manila, Philippines.

12. Defendant Brousko Investments Limited is a Cyprus company that owns and operates the domain hookupcloud.com, doing business in the state of California.

13. Defendant Manoel Levy is an individual that owns and operates the domain watchpeople.us, doing business in the state of California, residing in Florida.

14. Defendant Jason Silver is an individual that owns and operates the domains camflingslive.com and flirtcams.us, doing business in the state of California, residing in Florida.

15. Defendant Jake Rios is an individual that owns and operates the domains secureinvite.com, cammeetup.com, and livecamfling.com, doing business in the state of California, residing in Colorado.

16. Defendant Mingkai Zhang is an individual that owns and operates the domain cam555.com, doing business in the state of California, residing in Australia.

17. Defendant Mr. Elite Team is a company or individual that owns and operates the domains mywebcamcrush.com, webcamflushcrush.com, camflushcrush.com, blamcams.com, flirtyinvitation.com, disrespectmybody.com, cambayHD.com, and nervoustv.com, doing business in the state of California, residing in Nevada.

18. Defendant Kryzysztof Slawinski is a company or individual that owns and operates the domain sunnydollars.net, doing business in the state of California, residing in Singapore.

19. Defendant Doe 5 is a company or individual that owns and operates the domain flirtcamcrush.com, doing business in the state of California.

20. Defendants Does 6 and following are companies or individuals with the following ip addresses: 54.241.47.12, 64.31.27.27, 42.60.238.249, 173.0.48.0/20, 173.232.20.102, 174.140.166.150, 174.140.166.153, 174.141.208.111, 184.82.185.73, 198.143.160.250, 207.204.225.31, 208.115.192.0/18, 208.89.208.0/21, 216.131.110.193, 216.131.64.0/19, 216.144.240.0/20, 50.115.160.0/20, 63.143.32.0/19, 64.187.96.0/19, 64.31.0.0/198, 69.162.64.0/18, 74.63.192.0/18, 96.127.130.176/29, 98.158.224.0/20, 69.162.82.34, 54.241.47.12, 173.234.227.0/24, 173.208.36.0/24, 173.234.224.0/22, 173.234.0.0/16, and 173.208.100.0/22.

21. Does 39 through 100 are companies or individuals who are acting in conspiracy with Defendants to abusively spam Skout's users.

22. Plaintiff is unaware of the true names and capacities of defendants sued herein as Does, and therefore sues these defendants by such fictitious names. Doe Defendants are use proxy registration services to mask their identities by concealing their website registration information from the public. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and therefore alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged were proximately caused by such defendants. These fictitiously named defendants are herein referred to as "Does."

23. The actions alleged herein to have been undertaken by the defendants were undertaken by each defendant individually, were actions that each defendant caused to occur, were actions that each defendant authorized, controlled, directed, or had the ability to authorize, control or direct, and/or were actions each defendant assisted, participated in or otherwise encouraged, and are actions for which each defendant is liable. Each defendant aided and abetted

the actions of the defendants set forth below, in that each defendant had knowledge of those actions, provided assistance and benefited from those actions, in whole or in part. Each of the defendants was the agent of each of the remaining defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and with the permission and consent of other defendants.

## JURISDICTION

24. This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332 because Plaintiff is a citizen of California and Defendants are citizens of foreign states, and because value of the amount in controversy exceeds $75,000 with respect to Plaintiff's claims against each Defendant.

25. This Court also has federal question jurisdiction over this action under 28 U.S.C. § 1331, because this action alleges violations of the Computer Fraud and Abuse Act (18 U.S.C. § 1030 *et seq.*) and the Controlling the Assault of Non-Solicited Pornography and Marketing Act (15 U.S.C. § 7701 *et seq.*). The court has supplemental jurisdiction over the remaining claims under 29 U.S.C. § 1367.

26. Venue is proper in the Northern District of California under 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to the claims at issue in this lawsuit occurred in this District.

## INTRADISTRICT ASSIGNMENT

27. Assignment to the San Francisco Division of this Court is appropriate under Civil Local Rule 3-2, in that the claims arose in San Francisco County, and Plaintiff is headquartered in San Francisco County.

## FACTS GIVING RISE TO ALL CLAIMS FOR RELIEF

### Skout's Service

28. Skout is a mobile network for meeting new people. Users can use Skout's location-based communication platform to chat with and meet other users. Unlike other

location-based apps, Skout provides general rather than specific location information, allowing users to decide how they want to interact with a new connection. The service is free of charge.

29. After they set up an account, Skout users can then use their account to send messages to other Skout users. These messages are sent through the Skout platform to the recipient.

Misuse of Skout's Platform

30. Skout and its legitimate users have been targeted by unscrupulous outside businesses and individuals, including Defendants, who misuse the Skout platform for abusive behaviors. Such behaviors are called "spam," which is the popular term for unsolicited commercial email messages. Examples of "spam" on Skout include sending a message with a harmful or unsolicited link (including links to phishing or malware sites, or to pornographic sites). Sending such messages is known as "spamming," and the senders of such messages are called "spammers."

31. Skout has been attacked by spammers on an ongoing basis for at least a year as of the filing of the original Complaint in this case.

32. Spam typically contains solicitations or advertisement for commercial businesses, products, or services. Often, such solicitations and advertising are false or misleading. Skout users do not desire these unsolicited messages and they interfere with recipients' use and enjoyment of the Skout service.

33. Spam messages are typically sent from Skout accounts that are created for the sole purpose of spamming Skout users. These spam accounts frequently use software programs that automate messaging functions. Automated spam accounts are colloquially referred to as "bots" or "spambots."

34. Over time, the methodology of the account creation has changed, in reaction to Skout's patches of its server end points. In some cases, on the order of 500 to 1000 accounts were created in a single five-minute interval. In other cases, account creation would happen gradually, with only a small number of accounts created every minute. Accounts would sometimes be left dormant for hours, in the hopes that they would go undetected at the account

creation phase. The methodology of account creation would change depending on the reactive measures Skout took to curtail the spam.

35. Spammers, and companies that enable them to spam, including Defendants in this case, harm Skout by negatively affecting Skout's users' experience, damaging users' goodwill towards Skout, and causing Skout users to terminate their accounts due to dissatisfaction with the level of spam on Skout. Spammers, including Defendants in this case, have also caused Skout to lose prospective business relationships, and to spend substantial amounts of money, personnel time, and other resources combatting spam. Defendants' actions have also placed a burden on Skout's computer system and equipment and thus have interfered with the efficient functioning of Skout's platform and computer system.

36. The damages caused by Defendants in this case are in excess of $75,000 for each Defendant. Skout would not have incurred these damages but for the actions of Defendants. Skout continues to incur damages through the ongoing actions of Defendants.

<u>Skout's Terms of Use</u>

37. In order to set up a Skout account, users, including Defendants in this case, must explicitly agree to Skout's Terms of Use Agreement, which include and incorporate Skout's Privacy Policy and Acceptable Use Policy (collectively, the "Terms").

38. The Terms are attached as Exhibit A and are prominently featured on Skout's website.

39. Skout users, including Defendants in this case, agree to the following specific terms, among others:

> The Services are for your personal and noncommercial use only…You shall not modify, copy, distribute, transmit, display, perform, reproduce, publish, license, create derivative works from, reverse engineer, transfer or sell for any commercial purposes any portion of the Services, use of the Services or access to the Services, except for limited reverse engineering activities that may be, and only to the extent, permitted by applicable law...You also agree not to: interfere with or disrupt the Services or servers or networks connected to the Services; interfere with, disrupt or circumvent any security feature of the Services; use the Services to violate, whether intentionally or unintentionally, any applicable local, state, national or international law; use the Service to harm minors in any way; use the Services to reveal any personal information about another individual, including any information that may be used to track, contact or impersonate that individual; defraud or mislead Skout or other users or impersonate any person or entity or

> falsely state or otherwise misrepresent your affiliation with a person or entity; create any Account by automated means or false pretenses or use any other user's Account for any purpose, including to circumvent a suspension or ban; or disguise the origin of any access to the Services. You further agree to comply with all local rules regarding online conduct and acceptable User Content, and you agree to comply with all applicable laws regarding the transmission of technical data exported from the United States or the country in which you reside. This provision is not meant to be exhaustive, and Skout reserves the right to determine what conduct it considers to be in violation of this provision or otherwise outside the spirit of the Services and to take action, which may include termination of your Account and exclusion from further participation in the Services.

(*See* Ex. A.)

40. Defendants agreed to these Terms, as they each have opened at least one account on Skout.

<u>Defendants' Misuse of the Skout Platform</u>

41. Defendants Jen Processing, LTD, Jennifer Nicole Newnham, Christopher Russell Newnham, Infium, LTD, CityNet Line, V.A.N. Kereskedelmi es Szolgaltato Beteti Tarsasag, Epiohost LTD, Edibert Ian DeGuzman, Norman Demajor, Idoya Limited, Brousko Investments Limited, Manoel Levy, Jason Silver, Jake Rios, Mingkai Zhang, Mr. Elite Team, Kryzysztof Slawinski and Does 5-100 have created user accounts, or caused user accounts to be created, or acted in concert with those who have created user accounts, on Skout for the purpose of spamming Skout users for their own commercial purposes and financial gain.

42. Defendants use bots or other automated techniques for the purpose of directing Skout users to pornographic websites owned by Defendants or by Defendants' business affiliates. Defendants' bots entice Skout's users through their usernames (for example, fun.girl1) and conversations to chat with them, and, then, through links sent in the chat conversation, to visit Defendants', or Defendants' affiliates', websites. The bots run scripts that scan chat activity in two-way chats, sniffing messages sent by the other party for key words that allow the bot to tailor a response. Defendants' bots also hand out yahoo or msn usernames, with the intent of providing the link to the pornographic websites outside of Skout's platform. Defendants' bots also send suggestive, and sometimes pornographic images to users, with the embedded text of a skype username, or the url of a pornographic website.

43. For example, Defendants have tried to get Skout users to visit the following family of pornographic websites: xxxblackbook.com, liveprivateparts.com, webcamights.com, mywebcamcrush.com, webcamflushcrush.com, camflushcrush.com, blamcams.com, flirtyinvitation.com, paydirtdollars.com, sunnydollars.net, cam555.com, disrespectmybody.com, cambayHD.com, nervoustv.com, watchpeople.us, flirtcams.us, secureinvite.com, cammeetup.com, flirtcamcrush.com, camflingslive.com, livecamfling.com, and hookupcloud.com.

44. Defendants have, over time, changed the methods by which they try to direct Skout's users to their websites, in reaction to actions taken by Skout.

45. These actions violate the Skout Terms, cause damage to Skout and its users and benefit Defendants financially.

46. Defendants took all of these acts intentionally, and acted with malice, oppression and fraud.

## CLAIMS FOR RELIEF

### FIRST CLAIM
Breach of Contract
(Against all Defendants)

47. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1-46 as though fully set forth herein.

48. All Skout users, including Defendants, are parties to Skout's Terms, and are bound by the Terms in their actions. The Terms are a valid, enforceable contract through which Defendants obtained a limited license to use the Skout services.

49. Plaintiff has performed all of its obligations under the Terms that were not excused by Defendants' actions.

50. As set forth above, Defendants have breached and materially exceeded the scope of the limited license provided under the Terms including, but not limited to, the following breaches: 1) using Skout for commercial purposes; 2) interfering with or disrupting Skout's services; 3) using Skout's services in a manner that violates local, state, national or international law; 4) using Skout's services to harm minors; 5) using Skout's services to reveal personal

information about Skout users; 6) defrauding or misleading Skout and its users; 7) impersonating a person or entity and falsely stating or otherwise misrepresenting their affiliation with a person or entity; 8) creating an account by automated means and false pretenses; 9) using other users' accounts; 10) failing to comply with local rules; 11) failing to comply with applicable laws regarding the transmission of technical data exported from the United States or the countries in which Defendants reside.

51. Defendants' ongoing material breaches of the Terms have harmed Skout in an amount to be determined at trial, but in excess of $75,000 as to each Defendant.

SECOND CLAIM
Fraud
(Against all Defendants)

52. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1-51 as though fully set forth herein.

53. When Defendants created Skout user accounts, they agreed to be bound by the Terms, as set forth above. By agreeing to the Terms, Defendants misrepresented to Skout that they would comply with the Terms. Defendants each made these misrepresentations, despite intending not to abide by the Terms, with the intent to induce reliance by Skout.

54. Skout justifiably relied on Defendants' misrepresentations, and granted them user accounts and, consequently, access to Skout's platform and, indirectly, other users.

55. As a direct result of Defendants' fraudulent actions, Skout has been harmed in an amount to be determined at trial, but in excess of $75,000 as to each Defendant.

56. Defendants acted with malice, fraud and oppression in making these misrepresentations and causing damages to Skout, justifying an award of punitive damages against each Defendant.

THIRD CLAIM

Unlawful, Unfair, and Fraudulent Business Practices Under California Business & Professions Code § 17200

(Against all Defendants)

57. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1-56 as though fully set forth herein.

58. Defendants' actions, as set forth above, constitute unlawful and/or fraudulent business acts or practices under California Business and Professions Code § 17200 *et seq.* (the "Unfair Competition Law" or "UCL").

59. Defendants' actions are unlawful under the UCL because Defendants' independently unlawful wrongs of breach of contract and fraud, set forth above, violate California law.

60. Defendants' conduct is fraudulent under the UCL because Skout users, who are reasonable consumers, have been and will continue to be confused and deceived by Defendants' business and advertising practices and actions set forth herein. Defendants deceive Skout users by sending deceptive spam messages that cause Skout users to believe that clicking on the link in such messages will lead them to websites other than those to which they actually lead, or websites that offer other services than they actually do. Defendants also deceive Skout users regarding the identity of the people or entities that have sent the unsolicited and deceptive messages.

61. Defendants' unlawful and fraudulent actions have caused and will continue to cause irreparable harm to Skout. Unless such practices are enjoined, Defendants will cause further irreparable injury, for which Skout has no adequate remedy at law.

FOURTH CLAIM

The Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, *et seq.*

(Against all Defendants)

62. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1-61 as though fully set forth herein.

63. Skout's mobile app, platform, and computers are protected computers as defined in 18 U.S.C. § 1030(e)(2)(B), as they are used in interstate and foreign commerce and communication.

64. Defendants are accessing Skout's protected computers without authorization, as detailed in Skout's Terms. Defendants "exceed[ed] authorized access" to Skout, as defined in 18 U.S.C. § 1030(e)(5), by accessing Skout's protected computers without authorization and using that access to obtain or alter information that they are not entitled to obtain or alter, including obtaining chat activity and sniffing messages sent by the users for key words.

65. Defendants are intentionally accessing Skout's computers without authorization, or exceeding authorized access, and obtaining information from Skout's protected computers involving interstate or foreign communications in violation of 18 U.S.C. § 1030(a)(2).

66. Defendants are knowingly, and with intent to defraud, accessing Skout's protected computers without authorization or exceeding authorized access, and furthering their intentional fraud by obtaining more than $5,000 in value in violation of 18 U.S.C. § 1030(a)(4).

67. Defendants are knowingly, and without authorization, accessing protected Skout computers and causing the transmission of programs, information, code, or commands that are intentionally causing damage and loss to Skout in violation of 18 U.S.C. § 1030(a)(5)(A). Skout has lost at least $5000 in a single year per Defendant, as explained in paragraph 35 above.

68. Defendants are intentionally accessing Skout's protected computers without authorization and are each recklessly causing damage and loss to Skout of at least $5000 in a single year in violation of 18 U.S.C. § 1030(a)(5)(C).

69. Defendants are, in addition to committing the above violations, attempting to commit the above offenses in violation of 18 U.S.C. § 1030(b).

70. Skout has suffered and continues to suffer harm and loss by Defendants' violations, including by having Skout's users' experience being negatively affected, Skout's goodwill by its users being damaged, and causing Skout users to terminate their accounts due to dissatisfaction with the level of spam on Skout. Spammers, including Defendants in this case,

have also caused Skout to lose prospective business relationships, and to spend substantial amounts of money, personnel time, and other resources combatting spam.

71. Skout brings this action pursuant to 18 U.S.C. § 1030(g) and seeks compensatory and other equitable relief in an amount to be proven at trial.

72. Skout has suffered and continues to suffer irreparable and incalculable harm and injuries as a result of Defendants' violations. The harm will continue unless Defendants are enjoined from further unauthorized use of Skout's protected computers. Skout has no adequate remedy at law.

## FIFTH CLAIM

California Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502(c)
(Against all Defendants)

73. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1-72 as though fully set forth herein.

74. Skout owns computers, computer systems, computer networks, computer programs and proprietary data.

75. Defendants are knowingly accessing and without permission, altering, damaging, deleting, destroying, or otherwise using Skout's data, computers, computer systems or computer network to (1) devise or execute a scheme to defraud and deceive or (2) wrongfully control or obtain money, property, or data in violation of Cal. Penal Code § 502(c)(1).

76. Defendants are knowingly accessing and without permission taking, copying, or using data from Skout's computers, computer systems or computer network in violation of Cal. Penal Code § 502(c)(2).

77. Defendants are knowingly and without permission are using or causing to be used Skout's computer services in violation of Cal. Penal Code § 502(c)(3).

78. Defendants are knowingly accessing and without permission, adding, altering, damaging, deleting, or destroying data, computer software, or computer programs which reside or exist on Skout's computers, computer systems, or computer network in violation of Cal. Penal Code § 502(c)(4).

79. Defendants are knowingly and without permission disrupting or causing the disruption of Skout's computer platform and services in violation of Cal. Penal Code § 502(c)(5).

80. On information and belief, Defendants are knowingly and without permission providing or assisting in providing a means of accessing Skout's computers, computer system, or computer network in violation of this section in violation of Cal. Penal Code § 502(c)(6).

81. On information and belief, Defendants knowingly and without permission are accessing or causing to be accessed Skout's computers, computer systems, and/or computer network in violation of Cal. Penal Code § 502(c)(7).

82. Skout has suffered and continues to suffer harm and loss by Defendants' violations, including by having Skout's users' experience being negatively affected, Skout's goodwill by its users being damaged, and causing Skout users to terminate their accounts due to dissatisfaction with the level of spam on Skout. Spammers, including Defendants in this case, have also caused Skout to lose prospective business relationships, and to spend substantial amounts of money, personnel time, and other resources combatting spam.

83. Skout brings this action pursuant to Cal. Penal Code § 502(e)(1) and seeks compensatory damages, in an amount to be proven at trial, and injunctive or other equitable relief.

84. Skout has suffered irreparable and incalculable harm and injuries from Defendants' violations. The harm will continue unless Defendants are enjoined from further violations of this section. Skout has no adequate remedy at law.

85. Skout is also entitled to punitive or exemplary damages pursuant to Cal. Penal Code § 502(e)(4) because Defendants' violations were willful and Defendants are guilty of oppression, fraud, or malice as defined in Cal. Civil Code § 3294.

86. Skout is entitled to reasonable attorney's fees as provided in Cal. Penal Code § 502(e)(2).

SIXTH CLAIM
Controlling the Assault of Non-Solicited Pornography and Marketing ("CAN-SPAM"),
15 U.S.C. § 7701, *et seq.*
(Against all Defendants)

87. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1-86 as though fully set forth herein.

88. Defendants' electronic messages and spam are "commercial electronic mail messages," as defined in 15 U.S.C. § 7702(2)(A), because their primary purpose is the commercial advertisement or promotion of a commercial product or service (including content on an Internet website operated for a commercial purpose).

89. Defendants have and continue to "initiate' commercial electronic mail messages, as defined in 15 U.S.C. § 7702(9) because they are originating or transmitting such messages or procuring the origination or transmissions of such message, as defined in 15 U.S.C. § 7702(12) and 15 U.S.C. § 7704(g)(2).

90. Skout is an "internet access service," as defined in 15 U.S.C. § 7702(11), because it provides a service that enables users to access content, information, or other services offered over the Internet, and may also include access to proprietary content, information, and other services as a part of a package of services offered to consumers.

91. Skout's platform and computers are "protected computer[s]" as defined in 15 U.S.C. § 7702(13), because they are used in interstate and foreign commerce and communication.

92. Defendants have and continue to initiate transmissions of commercial electronic mail message, through Skout's protected computers and to Skout users, which contain or are accompanied by information headers that are materially false or materially misleading, in violation of 15 U.S.C. § 7704(a)(1).

93. Defendants are engaging in a pattern or practice of initiating transmissions, through Skout's protected computers to Skout users, of commercial electronic mail messages with actual knowledge or knowledge fairly implied on the basis of objective circumstances, that the messages' subject heading are likely to mislead a recipient, acting reasonably under the

circumstances, about a material fact regarding the contents or subject matter of the message in violation of 15 U.S.C. § 7704(a)(2).

94. Defendants are engaging in a pattern or practice of initiating transmission, through Skout's protected computers to Skout users, of commercial electronic mail messages that do not containing a functioning return address or other Internet-based opt-out mechanism, clearly and conspicuously displayed, in violation of 15 U.S.C. § 7704(a)(3).

95. Defendants are engaging in a pattern or practice of initiating transmission of commercial electronic messages, through Skout's protected computers to Skout users, that do not contain (1) clear and conspicuous identification that the messages were advertisements or solicitations, and (2) clear and conspicuous notice of the opportunity to decline to receive further commercial emails from the sender, and (3) a valid physical postal address of the sender in violation of 15 U.S.C. § 7704(a)(5).

96. Defendants are using Skout's protected computers and platform to use scripts or other automated means to register for multiple accounts from which to transmit to a protected computer, or enable another to transmit to a protected computer, unlawful commercial electronic mail messages, as described above, in violation of 15 U.S.C. § 7704(b)(2).

97. Defendants are accessing Skout's protected computers and computer network and platform without authorization in violation of 15 U.S.C. § 7704(b)(3) and knowingly relaying or retransmitting commercial electronic mail messages from Skout's protected computers and computer network in violation of 15 U.S.C. § 7704(a).

98. Defendants are accessing Skout's protected computers, computer network, and platform without authorization in violation of 15 U.S.C. § 7704(d)(1) and initiating commercial electronic mail messages that includes sexually oriented material and failing to include in the heading for the electronic mail message the marks or notices prescribed by the Federal Trade Commission.

99. Defendants allow the promotion of their business, products, or services sold or offered for sale in these commercial electronic message that are in violation of 15 U.S.C. § 7704(a)(1). Defendants know or should know in the ordinary course of their trade or business

that their business, products, or services sold or offered for sale were being promoted in these unlawful commercial electronic mail messages. Defendants also received or expected to receive an economic benefit from such promotion. Defendants took no reasonable action to prevent the transmission or to detect the transmission and report it to the Federal Trade Commission. Defendants' actions violated 15 U.S.C. § 7705(a).

100. Defendants are adversely affecting Skout by causing higher-bandwith utilization, causing Skout to expend time and resources to investigate and prevent the unauthorized access and abuse of its computer network and platform, and to protect its users against unsolicited commercial electronic messages. Defendants' actions are also deterring Skout's existing users and potential new users from using Skout, and damaging Skout's goodwill and reputation with its customers and the community at large.

101. Skout is a provider of Internet access services adversely affected by Defendants' violations of 15 U.S.C. §§ 7704(a)(1), (2), (3), and (5) and 15 U.S.C. §§ 7704(b)(1), (2), and (3), and 15 U.S.C. § 7704(d)(1), and 15 U.S.C. § 7705(a). According, Skout brings this civil action under 15 U.S.C. § 7706(g).

102. Skout is entitled to an injunction against further violations by the Defendants as provided by 15 U.S.C. § 7706(g)(1)(A). Skout will continue to suffer immediate and irreparable harm if Defendants' conduct is not enjoined. Skout has no adequate remedy at law.

103. As provided in 15 U.S.C. § 7706(g)(1)(B), Skout is entitled to the greater of its actual monetary loss or statutory damages as calculated in 15 U.S.C. § 7706(g)(3)(A) in an amount to be proven at trial.

104. Skout is entitled to aggravated damages pursuant to 15 U.S.C. § 7706(g)(3)(C) in an amount equal to three times the amount otherwise available because Defendants committed their violations willfully and knowingly and because Defendants' unlawful activity included one or more of the aggravated violations set forth in 15 U.S.C. § 7704(b).

105. Skout is entitled to reasonable costs, including reasonable attorneys' fees as provided by 15 U.S.C. § 7706(g)(4).

PRAYER FOR RELIEF

WHEREFORE, Plaintiff Skout, Inc. respectfully requests that this Court enter judgment against Defendants Jen Processing, LTD, Infium, LTD, CityNet Line, V.A.N. Kereskedelmi es Szolgaltato Beteti Tarsasag, Epiohost LTD, Edibert Ian DeGuzman, Norman Demajor, Idoya Limited, Brousko Investments Limited, Manoel Levy, Jason Silver, Jake Rios, Mingkai Zhang, Mr. Elite Team, Kryzysztof Slawinski and Does 5-100, and provide the following relief:

1) Injunctive relief, including a preliminary and permanent injunction enjoining restraining Defendants from engaging in the conduct described above;

2) Damages, including compensatory, statutory, aggravated and punitive damages, restitution, and disgorgement of profits;

3) Attorney fees and costs, to the extent permitted by law;

4) Pre- and post-judgment interest; and

5) Such other relief as the Court may deem just and proper.

JURY DEMAND

Plaintiff requests this case be tried to a jury on all issues triable by a jury.

Dated this May 29, 2015

/s/ Steven Kaufhold

KAUFHOLD GASKIN LLP
Steven Kaufhold
Ruth Hawley
Quynh Vu

*Attorneys for Plaintiff Skout, Inc.*

# EXHIBIT A

# Skout.com TERMS OF USE AGREEMENT

## Terms Of Use

Please read these Terms of Use carefully, which include and hereby incorporate the Privacy Policy and Acceptable Use Policy (collectively, the "Terms"). Skout provides a service that allows Account holders to create unique personal profiles and communicate with other members based on location. These Terms govern and apply to your access and use of Skout's social networking services available via Skout's mobile apps (Skout, Flurv and Boyahoy) (collectively, the "Apps") and Skout's websites (www.skout.com, www.flurv.skout.com, www.boyahoy.skout.com) (collectively, the "Sites"). To make these Terms easier to read, the Sites, our services and the Apps are collectively called the "Services." This document constitutes a legally binding agreement between you and Skout, Inc. ("Skout") The Service(s) are not intended for use by children under 13 years of age.

## Agreement to Terms

By accessing or using our Services, you agree that (1) you are age 13 or older, (2) you understand and agree to these Terms, and (3) if you are between the ages of 13 and 18, your legal guardian has reviewed and agrees to these Terms.

***IF YOU DO NOT UNDERSTAND OR DO NOT AGREE TO THESE TERMS, DO NOT USE THE SERVICE. IF YOU DO NOT AGREE TO THESE TERMS, THEN YOU HAVE NO RIGHT TO ACCESS OR USE THE SERVICE. USE OF THE SERVICE IS VOID WHERE PROHIBITED.***

## Changes to Terms or Services

We may modify the Terms at any time, in our sole discretion. If we do so, we'll let you know either by posting the modified Terms on the Site or through other communications. It's important that you review the Terms whenever we modify them because if you continue to use the Services after we have posted modified Terms on the Site, you are agreeing to be bound by the modified Terms. If you don't agree to be bound by the modified Terms, then you can't use the Services anymore. If you object to any change or modification, your sole recourse shall be to cease using the Services. YOU AGREE THAT SKOUT SHALL NOT BE LIABLE TO YOU OR TO ANY THIRD PARTY FOR ANY CHANGE OR MODIFICATION TO THESE TERMS. Except as may be expressly specified otherwise by Skout with respect to paid portions of the Services, we reserve the right to add, change, suspend or discontinue the Services, or any aspect or feature of the Services, without notice or liability.

## Who May Use the Services

You may use the Services only if you are 13 years or older and are not prohibited from using the Services under applicable law or under any

provision of these Terms. Additional eligibility requirements are as follows.

## *Eligibility on Skout - Adult Community*

You must be at least 18 years old to use the Skout Adult Site or to register for the Services. By using the Adult Site, you represent and warrant that you are at least 18 years old. If you're between the ages of 13-17, you may use Skout for Teens.

## *Eligibility on Skout - Teen Community*

You must be at least 13 years old or older to use the Skout Teen Site or to register for the Services. By using the Teen Site, you represent and warrant that you are at least 13 years old. Please note that if you register for Skout for Teens, when you turn 18 you will automatically be migrated to the Skout Adult Site and your minor friends will be lost.

If you're younger than 13, go outside and play!

## *Eligibility on Skout - Criminal History and Background Checks of Users*

By requesting to use, registering to use, and/or using the Adult or Teen Skout Service, you represent and warrant that you have never been convicted of a felony and/or are not required to register as a sex offender with any government entity. Skout DOES NOT CURRENTLY CONDUCT CRIMINAL BACKGROUND SCREENINGS ON ITS MEMBERS. However, Skout reserves the right to conduct any criminal background check, at any time and using available public records, to confirm your compliance with your representations and warrants above. BY AGREEING TO THESE TERMS AND CONDITIONS, YOU HEREBY AUTHORIZE ANY SUCH CHECK.

# Privacy Policy

Please refer to our Privacy Policy for information on how we collect, use and disclose information, including personal information, from our users.

# Creating a Skout Account

To access and use the Services, you will need to register and create an account (your "Account"). You can do this by providing an email address and password or through your account with Facebook. When creating an Account, you will be required to provide certain personal information about yourself, including your age. If you choose to register your Account using your Facebook account, we will extract certain personal information from your Facebook account, such as your name, age, email address and other personal information that your privacy settings on your Facebook account permit us to access. Only users who are 18 or older may register an Account on BoyAhoy.

It's important that you provide us with accurate, complete and up-to-date information for your Account, and you agree to update such information, as needed, to keep it accurate, complete and up-to-date. Because Skout maintains separate communities for users who are between the ages of 13 and 17 and users who are 18 and older, it is especially important that you are truthful when identifying your age.

Your profile may be deleted, and your Account may be terminated without warning, if we believe that you are under 13 years of age, if you represent yourself as under the age of 18 and we believe that you have misrepresented your age, or if we believe you are over 18 and represent yourself as under 18.

You agree that you won't disclose your Account password to anyone and you'll notify us immediately of any unauthorized use of your Account. You are responsible for all activities that occur under your Account, whether or not you know about them.

# Content and Content Rights

For purposes of these Terms: "Content" means text, graphics, images, music, software, audio, video, works of authorship of any kind, and information or other materials that are posted, generated, provided or otherwise made available through the Services; and "User Content" means any Content that Account holders (including you) provide to be made available through the Services. Accordingly, Content includes but is not limited to User Content.

## *Content Ownership, Responsibility and Removal*

Skout does not claim any ownership rights in any Content that you make available through the Services and nothing in these Terms will be deemed to restrict any rights that you may have to use and exploit your User Content. Subject to the foregoing, Skout and its licensors exclusively own all right, title and interest in and to the Services and Content, including all associated intellectual property rights. You acknowledge that the Services and Content are protected by copyright, trademark, and other laws of the United States and foreign countries. You agree not to remove, alter or obscure any copyright, trademark, service mark or other proprietary rights notices incorporated in or accompanying the Services or Content.

## *Rights in User Content Granted by You*

By making any User Content available through Services you hereby grant to Skout a perpetual, non-exclusive, transferable, sublicenseable, worldwide, royalty-free license to use, copy, modify, create derivative works based upon, distribute, publicly display, publicly perform and distribute your User Content in connection with operating and providing the Services and Content to you and to other Account holders.

You are solely responsible for all your User Content. You represent and warrant that you own all your User Content or you have all rights that are necessary to grant us the license rights in your User Content under these Terms. You also represent and warrant that neither your User Content, nor your use and provision of your User Content to be made available through the Services, nor any use of your User Content by Skout on or through the Services will infringe, misappropriate or violate a third party's intellectual property rights, rights of publicity or privacy, or any other rights or result in the violation of any applicable law or regulation.

You can remove your User Content by specifically deleting it from your profile. However, in certain instances, some of your User Content (such as virtual gifts you give or chat messages you send) may not be completely removed and copies of your User Content may continue to exist on the Services. We are not responsible or liable for the removal or deletion of (or the failure to remove or delete) any of your User Content.

## *Rights in Content Granted by Skout*

Subject to your compliance with these Terms, Skout grants you a limited, non-exclusive, non-transferable, non-sublicenseable license to download, view, copy, display and print the Content solely in connection with your permitted use of the Services and solely for your personal and non-commercial purposes.

# Virtual Items; Skout Points

You may obtain points through the Apps ("Skout Points") or other virtual items by engaging in certain actions (for example, by downloading third party apps) or purchasing them for the amounts set forth in the Apps. Skout Points and such other virtual items are referred to collectively as "Virtual Items." Virtual Items are digital items only, and regardless of the terminology used, have no cash value and may never be redeemed for "real world" money. Your right to use any Virtual Items that you obtain is limited to a non-exclusive, non-transferable, non-sublicenseable, revocable right to use such Skout Points or other Virtual Items solely within the Apps, for example, to send "gifts" to other users, save pictures or use the "checked me out" functionality. Except for the limited rights described herein, you have no property interest or right or title in or to any Virtual Items, which remain the exclusive property of Skout. The scope, variety and type of Virtual Items that you may obtain can change at any time. Skout has the absolute right to manage, regulate, control, modify or eliminate such Virtual Items as it sees fit in its sole discretion, and Skout will have no liability to you or any third party for the exercise of such rights at any time.

Except where explicitly authorized within the Services, (i) transfers of Virtual Items between you and Account holders or third parties are strictly prohibited; (ii) outside of the Services, you may not buy or sell any Virtual Items for "real world" money or otherwise exchange items for value; and (iii) Skout does not recognize any such purported transfers of Virtual Items, nor the purported sale, gift or trade in the "real world" of anything that appears in the Services. Any attempt to do any of the foregoing is a violation of these Terms and will result in an automatic termination of your rights to use the Virtual Items and may result in termination of your Account, a lifetime ban from the Service and/or possible legal action. All Virtual Items are forfeited if your Account is terminated or suspended for any reason, in Skout's sole and absolute discretion, or if Skout discontinues providing the Services or Virtual Items.

# Acceptable Use Policy, Rules and Restrictions and Our Enforcement Rights

## *Acceptable Use Policy*

We ask that you respect our community of users and our desire for such users to feel safe when using the Services, including any Content. Accordingly, you agree that you'll only use the Services for lawful purposes and in a manner that is consistent with our Acceptable Use Policy. If you use the Services in a manner that is inconsistent with our Acceptable Use Policy we may suspend or terminate your Account.

## *Rules and Restrictions*

As a condition of your use of the Services, and without limiting your other obligations under these Terms, you agree to comply with the restrictions and rules of use set forth in this Section as well as any additional restrictions or rules set forth in the Services.

The Services are for your personal and noncommercial use only. You shall not modify, copy, distribute, transmit, display, perform, reproduce, publish, license, create derivative works from, reverse engineer, transfer or sell for any commercial purposes any portion of the Services, use of the Services or access to the Services, except for limited reverse engineering activities that may be, and only to the extent, permitted by applicable law.

You also agree not to:

interfere with or disrupt the Services or servers or networks connected to the Services;
interfere with, disrupt or circumvent any security feature of the Services;
use the Services to violate, whether intentionally or unintentionally, any applicable local, state, national or international law;
use the Service to harm minors in any way;
use the Services to reveal any personal information about another individual, including any information that may be used to track, contact or impersonate that individual;
defraud or mislead Skout or other users or impersonate any person or entity or falsely state or otherwise misrepresent your affiliation with a person or entity;
create any Account by automated means or false pretenses or use any other user's Account for any purpose, including to circumvent a suspension or ban; or
disguise the origin of any access to the Services.

You further agree to comply with all local rules regarding online conduct and acceptable User Content, and you agree to comply with all applicable laws regarding the transmission of technical data exported from the United States or the country in which you reside.

This provision is not meant to be exhaustive, and Skout reserves the right to determine what conduct it considers to be in violation of this provision or otherwise outside the spirit of the Services and to take action, which may include termination of your Account and exclusion from further participation in the Services.

## *Safety and Security*

We care about your safety and have created a resource to help you use our Services. Please review our Safety Awareness Center for important tips to help you stay safe when using our Services. While we take steps to provide a safe user environment in our online communities, Skout is not responsible for the conduct, whether online or offline, of any user of its Services. If you are a member of our teen community, Skout encourages you to discuss with your parent(s) or guardian(s) online safety issues for all of your social media memberships, including your Skout account.

## *Disclosure to Protect Abuse Victims*

Notwithstanding any other provision of these Terms, Skout reserves the right, but has no obligation, to disclose any information that you

submit to the Service if in its sole opinion Skout suspects or has reason to suspect that the information involves a party who may be the victim of abuse in any form. Abuse may include without limitation elder abuse, child abuse, spousal abuse, neglect, or domestic violence. Information may be disclosed to authorities that Skout, in its sole discretion, deems appropriate to handle such disclosure. Appropriate authorities may include without limitation law enforcement agencies, child protection agencies, or court officials. You hereby acknowledge and agree that Skout is permitted to make such disclosures.

## *Skout's Enforcement Rights*

Although we are not obligated to monitor access to or use of the Services or Content or to review or edit any Content, we have the right to do so including, but not limited to, for the purpose of operating the Services, to ensure compliance with these Terms, or to comply with applicable law or other legal requirements. We reserve the right, but are not obligated, to remove or disable access to any Content, at any time and without notice, including, but not limited to, if we, in our sole discretion, consider any Content to be objectionable or in violation of these Terms. We have the right to investigate violations of these Terms or conduct that affects the Services. We may also consult and cooperate with law enforcement authorities to prosecute users who violate the law.

## *Complaints and Law Enforcement Contact Information*

To resolve a complaint regarding the Service, you should review our Frequently Asked Questions (FAQ) by clicking on the Safety page or the "Contact Us" located at the bottom of any page of the Skout website, or e-mail us by clicking here. Law enforcement officials may send correspondence (such as subpoenas, court orders and warrants) to Skout via email to: TrustAndSafety@skout.com. All other communication or inquiries sent to this email address will be discarded.

## DMCA/Copyright Policy

Skout respects copyright law and expects its users to do the same. It is Skout's policy to terminate in appropriate circumstances Account holders who repeatedly infringe or are believed to be repeatedly infringing the rights of copyright holders. Please see Skout's Copyright Policy, for further information. We reserve the right to delete or disable content alleged to be infringing and to terminate repeat infringers.

## Links to Third Party Sites or Resources

The Services may include links to other apps or sites that are not operated by us, including through advertisements. We are providing these links to you only as a convenience and are not responsible for the content or links displayed on such apps or sites. If you decide to download a third-party app or access a third-party site, even if you do so to earn "free Skout Points", you assume all risk related to such access and use.

## Feedback

You acknowledge and agree that any feedback, comments or suggestions you may provide regarding the Services ("**Feedback**") will be the sole and exclusive property of Skout and you hereby irrevocably assign to us all of your right, title and interest in and to all Feedback. You agree that unless otherwise prohibited by law, Skout may use, sell, disclose and otherwise exploit the Feedback in any way and for any purpose, without restriction and without compensation to you.

# Termination

We may terminate your access to and use of the Services, at our sole discretion, at any time and without notice to you. You may deactivate your Account at any time by clicking the "Deactivate Account" button within your Settings page. When you deactivate your account, your profile and Account will not be viewable by other members of the Services. If you do not reactivate your account within 60 days, your Account will be terminated and closed. Upon any termination, discontinuation or cancellation of Services or your Account, all provisions of these Terms which by their nature should survive will survive, including, without limitation, ownership provisions, warranty disclaimers, limitations of liability, and dispute resolution provisions.

# Warranty Disclaimers

THE SERVICES AND CONTENT ARE PROVIDED "AS IS," WITHOUT WARRANTY OF ANY KIND. WITHOUT LIMITING THE FOREGOING, WE EXPLICITLY DISCLAIM ANY WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, QUIET ENJOYMENT OR NON-INFRINGEMENT, AND ANY WARRANTIES ARISING OUT OF COURSE OF DEALING OR USAGE OF TRADE. WE MAKE NO WARRANTY THAT THE SERVICES WILL MEET YOUR REQUIREMENTS OR BE AVAILABLE ON AN UNINTERRUPTED, SECURE, OR ERROR-FREE BASIS. WE MAKE NO WARRANTY REGARDING THE QUALITY, ACCURACY, TIMELINESS, TRUTHFULNESS, COMPLETENESS OR RELIABILITY OF THE SERVICES OR ANY CONTENT.

# Limitation of Liability

NEITHER SKOUT NOR ANY OTHER PARTY INVOLVED IN CREATING, PRODUCING, OR DELIVERING THE SERVICES OR CONTENT WILL BE LIABLE FOR ANY INCIDENTAL, SPECIAL, EXEMPLARY OR CONSEQUENTIAL DAMAGES, INCLUDING LOST PROFITS, LOSS OF DATA OR GOODWILL, SERVICE INTERRUPTION, COMPUTER DAMAGE OR SYSTEM FAILURE, OR THE COST OF SUBSTITUTE SERVICES (REGARDLESS OF HOW SUCH DAMAGES ARE CHARACTERIZED) ARISING OUT OF OR IN CONNECTION WITH THESE TERMS OR FROM THE USE OF OR INABILITY TO USE THE SERVICES OR CONTENT, OR BODILY INJURY, EMOTIONAL DISTRESS, AND/OR ANY OTHER DAMAGES RESULTING FROM COMMUNICATIONS OR MEETINGS WITH OTHER REGISTERED USERS, WHETHER BASED ON WARRANTY, CONTRACT, TORT (INCLUDING NEGLIGENCE), PRODUCT LIABILITY OR ANY OTHER LEGAL THEORY, AND WHETHER OR NOT SKOUT HAS BEEN INFORMED OF THE POSSIBILITY OF SUCH DAMAGES. SOME JURISDICTIONS DO NOT ALLOW THESES EXCLUSIONS OR LIMITATIONS OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, SO THE ABOVE LIMITATION MAY NOT APPLY TO YOU.

IN NO EVENT WILL THE TOTAL LIABILITY OF SKOUT OR ITS AFFILIATES, EMPLOYEES, DIRECTORS, OFFICERS, CONSULTANTS OR AGENTS

(COLLECTIVELY, THE "SKOUT PARTIES") ARISING OUT OF OR IN CONNECTION WITH THESE TERMS OR FROM THE USE OF OR INABILITY TO USE THE SERVICES OR CONTENT EXCEED THE GREATER OF THE AMOUNT YOU HAVE PAID TO SKOUT FOR USE OF THE SERVICES OR CONTENT OR ONE HUNDRED DOLLARS ($100). THE LIMITATIONS OF DAMAGES SET FORTH ABOVE ARE FUNDAMENTAL ELEMENTS OF THE BASIS OF THE BARGAIN BETWEEN SKOUT AND YOU.

## General Provisions

These Terms constitute the entire agreement between us regarding the Services, and supersede and replace any prior agreements we might have between us regarding the Services. If any provision of these Terms is held to be invalid or unenforceable by a court of competent jurisdiction, that provision will be enforced to the maximum extent permissible and the remaining provisions of these Terms will remain in effect.

You may not assign or transfer these Terms, by operation of law or otherwise, without Skout's prior written consent. Any attempt by you to assign or transfer these Terms, without such consent, will be null and of no effect. Skout may freely assign or transfer these Terms without restriction. Subject to the foregoing, these Terms will bind and inure to the benefit of the parties, their successors and permitted assigns.

Any notices or other communications provided by Skout under these Terms, including those regarding modifications to these Terms, will be given: (i) by Skout via email; or (ii) by posting to the Services. For notices made by e-mail, the date of receipt will be deemed the date on which such notice is transmitted.

Skout's failure to enforce any right or provision of these Terms will not be considered a waiver of those rights. The waiver of any such right or provision will be effective only if in writing and signed by a duly authorized representative of Skout. As used in these Terms, the word "including" means "including but not limited to." Except as expressly set forth in these Terms, the exercise by either party of any of its remedies under these Terms will be without prejudice to its other remedies under these Terms or otherwise.

## Questions & Contact Information

Please contact us if you have any questions about our Terms.

Last Updated August 28, 2013

| MOBILE | SUPPORT | MORE INFO |
|---|---|---|
| Skout for iPhone | Report Bugs and Feedback | About Us |
| Skout for Android | FAQ | Jobs at Skout |
| | Contact | Terms of Service |
| | | Online Safety Tips |

COPYRIGHT © 2007- SKOUT INC.